# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

DARRYL ROBERTS,

    Plaintiff,

v.

UNITED FOOD & COMMERCIAL WORKERS LOCAL 648,

    Defendant.

Case No. 19-cv-03320-PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 18

Defendant United Food & Commercial Workers Local 648's ("defendant") motion for summary judgment came on for hearing before this court on November 13, 2019. Pro se plaintiff Darryl Roberts ("plaintiff") appeared. Defendants appeared through their counsel, Caroline Cohen. Having read the papers filed by the parties and carefully considered their argument, proffered evidence, and relevant legal authority, and good cause appearing, the court hereby **GRANTS** defendant's motion for summary judgment for the reasons stated below.

**BACKGROUND**

On June 12, 2019, plaintiff filed a form employment discrimination complaint against defendant alleging claims under Title 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Dkt. 1 (Compl.) ¶ 3. On September 26, 2019, defendant filed this motion for summary judgment. Dkt. 18. In it, defendant argues that the court lacks "jurisdiction" to consider plaintiff's complaint, id. at 6, and, in any event, defendant has shown a legitimate

nondiscriminatory business reason for plaintiff's termination, id. at 7-9.[1]

## A. The Operative Allegations

In his complaint, plaintiff alleges that defendant discriminated against him in violation of Title VII by the following:

- Terminating his employment, id. ¶ 3-4; and
- Interfering with his "right as a good-standing member to run for a higher officer within [his] local union." id.

Plaintiff specifies his "race or color," id. ¶ 5(a), and checks the "other as specified below" box, id. ¶ 5(e), as the actionable basis for defendant's discrimination. Aside from statements made in various attachments to plaintiff's complaint (detailed as necessary below), the complaint fails to provide any other specific allegations supporting its claims.

## B. Circumstances Surrounding Plaintiff's Termination

This action arises out of a contested election for a local union's management positions. Defendant is a local union with a single office in San Francisco. Dkt. 18-1 (Larson Declaration) ¶ 3. At the time of plaintiff's termination (July 2016), defendant had 11 employees. Id.

Prior to plaintiff's termination, defendant employed plaintiff as a union business representative. Dkt. 1 ¶ 6.[2] As of 2013, plaintiff was employed under a collective bargaining agreement between defendant (as the employer) and the Federation of Agents and International Representatives ("FAIR") as the union. Dkt. 18-1 ¶ 4.

Sometime in July 2016, defendant held an election for internal management positions. Id. ¶ 6. Prior to the election, Larson held the position as president of defendant. Id. ¶ 2. Plaintiff announced his candidacy in opposition to Larson and other

---

[1] Defendant also argues against potential claims arising out of Title 29 U.S.C. § 411 (concerning union elections). However, no such claims are apparent from the face of plaintiff's employment discrimination complaint. Given that, the court will address defendant's argument on them only to the extent necessary to adjudicate the instant motion on the claims apparent in plaintiff's complaint.

[2] Given plaintiff's pro se status, the court will generously consider as proffered evidence plaintiff's factual assertions in his pleadings as evidentiary submissions in opposition to defendant's motion.

2

incumbent candidates. Id. ¶ 6. Plaintiff was initially declared winner of the election. Id., Ex. 9. Because plaintiff violated election rules, defendant's election committee ordered a rerun of the election. Id. ¶ 7; Id. Ex. 9. The reelection occurred on or around November 4, 2016. Id., Ex. 9. Larson was declared winner of the reelection and defendant's international body ("International UFCW") upheld that reelection's results. Id. ¶ 8. On July 30, 2016, and apparently prior to the reelection, Larson terminated plaintiff. Id. ¶ 8.

The parties dispute the reasons for such termination. In his declaration, Larson states that he did so because of "[plaintiff's] gross disloyalty." Id. ¶ 8. Larson further testifies that "the sole reason [he] terminated Plaintiff was because he chose to run against me in the union election." Id. Larson further reiterates the following:

> "I terminated plaintiff solely because he chose to run against me which was grossly disloyal. He campaigned against me, which included making statements which were critical of my leadership and of the things that I had accomplished as President during my first term in office. Business representatives hold responsibilities to carry out multiple key functions of the union and are seen as the face of the union to the membership. I determined that plaintiff's continued employment as a business representative was untenable as his gross disloyalty posed a significant block to the effective administration of the union." Id. ¶ 18.

Several documents attached to plaintiff's complaint support Larson's explanation. Dkt. 1 at 10 (attaching letter from defendant's attorney stating that plaintiff was terminated "because of gross disloyalty to the elected leadership"; Dkt. 1 at 7-9 (attaching letters from unidentified third-parties to International UFCW criticizing that body for a "propensity to protect its Incumbent Presidents instead of protecting the democratic process.").

In a separate pleading titled "Opposition to Defendant's Answer," plaintiff summarily asserts the existence of a "plethora" of evidence compiled against defendants for a "laundry list of unethical, racist, discriminatory, human rights, and civil rights violations that resulted in Plaintiff's termination on July 29, 2019 for 'Gross Disloyalty to the Elected Leadership.'" Dkt. 5 at 3. Despite plaintiff's conclusory assertion, such filing

includes no specific allegation or evidence in support of that assertion.[3]

Similarly, in his belated opposition to this motion,[4] plaintiff also summarily asserts that Larson's declaration acknowledges that defendant applied "non-compete provisions of old Jim Crow Laws . . . which specifically prohibited African Americans from competing for any and all positions typically held by White Men" and that such actions "would justify termination for 'gross disloyalty.'" Id. at 3. Plaintiff offers no further explanation or evidence in support of such assertion. Aside from some conclusory references to institutional racism in society, the remainder of this filing is otherwise materially identical to plaintiff's opposition to defendant's answer.

### C. Procedural Posture

Prior to initiating this action, plaintiff filed grievances with numerous administrative bodies. Such bodies include (1) the National Labor Relations Board ("NLRB"), Dkt. 18-1, Ex. 1; (2) FAIR (plaintiff's union), id., Ex. 2; (3) the Department of Labor ("DOL"), id., Ex. 9; and (4) the Equal Employment Opportunity Commission ("EEOC"), id., Ex. 10.

To the extent necessary, the court will detail the circumstances surrounding any such grievances in its analysis below.

## DISCUSSION

### A. Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

---

[3] The remainder of that filing merely attaches a copy of the United States Supreme Court's decision in Finnegan v. Leu, 456 U.S. 431 (1982), Dkt. 5 at 3-19, an excerpt of what appears to be a random treatise or brief section concerning the statute of limitations for unfair competition law claims as well as certain tortious false light doctrine, id. at 19-22, and details a one paragraph conclusion requesting that the court overrule defendant's answer or grant leave to amend, id. at 22-23.
[4] Again, given plaintiff's pro se status, the court will consider factual assertions made by him in his opposition as proffered evidence for purposes of this motion.

4

1    reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,'
2    or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to
3    present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps
4    Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

5    Courts recognize two ways for a moving defendant to show the absence of
6    genuine dispute of material fact: (1) proffer evidence affirmatively negating any element
7    of the challenged claim or (2) identify the absence of evidence necessary for plaintiff to
8    substantiate such claim. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
9    (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either
10   produce evidence negating an essential element of the nonmoving party's claim or
11   defense or show that the nonmoving party does not have enough evidence of an
12   essential element to carry its ultimate burden of persuasion at trial."). Rule 56(c)(1)
13   expressly requires that, to show the existence or nonexistence of a disputed fact, a party
14   must "cit[e] to particular parts of materials in the record." Fed. R. Civ. Pro. 56(c)(1) ("A
15   party asserting that a fact cannot be or is genuinely disputed must support the assertion
16   by: . . . citing to particular parts of materials in the record, including depositions,
17   documents, electronically stored information, affidavits or declarations, stipulations
18   (including those made for purposes of the motion only), admissions, interrogatory
19   answers, or other materials.").

20   "Once the moving party meets its initial burden, the nonmoving party must go
21   beyond the pleadings and, by its own affidavits or by the depositions, answers to
22   interrogatories, and admissions on file, come forth with specific facts to show that a
23   genuine issue of material fact exists." Hansen v. United States, 7 F.3d 137, 138 (9th Cir.
24   1993) (per curiam). When the nonmoving party relies only on its own affidavits to oppose
25   summary judgment, it cannot rely on conclusory allegations unsupported by factual data
26   to create an issue of material fact." Id.

27   The court must view the evidence in the light most favorable to the nonmoving
28   party: if evidence produced by the moving party conflicts with evidence produced by the

1 nonmoving party, the judge must assume the truth of the evidence set forth by the
2 nonmoving party with respect to that fact. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014);
3 Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  However, when a non-moving
4 party fails to produce evidence rebutting defendants' showing, then an order for summary
5 adjudication is proper.  Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to
6 produce enough evidence to create a genuine issue of material fact, the moving party
7 wins the motion for summary judgment.")

Lastly, the Ninth Circuit recognizes that "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted); Chan v. Ramada Plaza Hotel, 2003 WL 22159061, at *3 (N.D. Cal. Sept. 12, 2003) ("It is here noted that [pro se] plaintiff was given every opportunity to meet his burden on summary judgment.").

**B.   Analysis**

**1.   Summary Judgment Is Proper Because Plaintiff Has Failed to Show that Defendant Is an "Employer" Within the Meaning of Title VII**

In his complaint, plaintiff alleges that this court maintains jurisdiction pursuant to Title 42 U.S.C. §2000e-5.  Compl. ¶ 3.  Defendant first argues that this court lacks "jurisdiction" over plaintiff's claims for three independent reasons, only one of which the court finds relevant to decide the instant motion.  According to defendant, Title VII does not apply to its conduct because, pursuant to Title 42 U.S.C. § 2000e(b), defendant does not qualify as an employer given that it comprises less than 15 employees.  Dkt. 20 at 6.

Defendant is correct.  Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . ." 42 U.S.C. §2000e(b).

Here, defendant submitted a declaration testifying that "at the time that Darryl Roberts . . . was terminated in July of 2016, UFCW Local 648 had 11 employees." Dkt.

18-1 ¶ 3. Plaintiff failed to contest this showing. As a result, summary judgment of plaintiff's complaint is proper on this ground alone.

### 2. Summary Judgment Is Separately Proper under the McDonnell-Douglas Framework

Discrimination and retaliation claims brought under Title VII are subject to a unique burden-shifting analysis. Surrell v. California Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008) ("Typically, we apply the familiar McDonnell Douglas burden shifting framework for Title VII and § 1981 claims."). Under McDonnell Douglas, a plaintiff must first prove a prima facie case of discrimination or retaliation. Surrell, 518 F.3d at 1105 ("Under this framework, the plaintiff first must establish a prima facie case of discrimination or retaliation."). The Ninth Circuit has emphasized that "the degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence." Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

If met, the employer then must articulate a legitimate non-discriminatory reason for its challenged employment decision. Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003) ("If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.").

If the employer does so, "[t]he plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. . . .The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." Dominguez-Curry, 424 F.3d at 1037. A plaintiff may make such a showing by producing either direct evidence of discriminatory motive, which need not be substantial, or circumstantial evidence that is "specific and substantial evidence of pretext." Godwin v. Hunt Wesson, Inc., 150 F.3d

7

1217, 1221-22 (9th Cir. 1998). "Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption," and it "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Dominguez-Curry, 424 F.3d at 1038. If the plaintiff succeeds in demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case goes beyond summary judgment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

        **a.**      **Summary Adjudication of Plaintiff's Discrimination Claim Is Appropriate**

Title VII provides a cause of action for certain employment-related discrimination based on a protected trait. To establish a prima facie case of discrimination, a plaintiff must allege that (1) he is a member of a protected class; (2) he was qualified for his position and performing his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action that give rise to an inference of discrimination. Hawn v. Exec. Jet Mgtm., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010).

        **i.**      **Plaintiff Failed to Establish a Prima Facie Case of Discrimination**

Here, plaintiff failed to establish a prima facie case of discrimination. Plaintiff provides only the conclusory allegation that defendant discriminated against him on the basis of his "race or color." Compl. ¶ 4(d). While plaintiff fails to allege his protected class, the court will take judicial notice, based upon his appearance at oral argument, that plaintiff is African-American.

That said, plaintiff still fails to provide any evidence that he was performing his job satisfactorily. Defendant, on the other hand, offered evidence tending to affirmatively negate such a finding. In his declaration, Larson testified that a union business representative maintains various responsibilities, including serving as "the face of the

8

union to membership." Dkt. 18-1 ¶ 18. Plaintiff failed to show how he could maintain that perception of unity (as a business representative) but still challenge an incumbent in an election. Plaintiff further failed to offer any evidence showing how similarly-situated persons outside his protected racial class were treated more favorably.

Separately, plaintiff's prior allegations in his NLRB charges undermine his instant racial discrimination claim. Significantly, in both charges, plaintiff alleges that defendant terminated him "because if [sic] his political activity against an incumbent Union officer because of that officer's adverse impact on those employees' work conditions." Dkt. 18-1, Ex. 1 ¶ 2, Ex. 4 ¶ 2. In this description, plaintiff notably fails to make any reference to his "race or color" as part of the basis for his termination. Such omission belies the credibility of his sole conclusory allegation of racial discrimination in his complaint. Because plaintiff altogether fails to establish a prima facie case of discrimination on the basis of race, summary adjudication of this claim is proper on this ground as well.

### ii. Defendant Proffered Legitimate Non-Discriminatory Reasons for Plaintiff's Termination

Regardless, even if plaintiff satisfied his initial burden under McDonnell-Douglas, defendant offered at least two non-discriminatory reasons for its challenged employment decision. First, plaintiff acted disloyally toward the incumbent (and ultimately victorious) local union president, Larson, by opposing him during the July 2016 election. In support of its position that such reason qualifies as a legitimate nondiscriminatory reason justifying plaintiff's removal, defendant cites Finnegan v. Leu 456 U.S. 431 (1982), which held that that union business agents terminated by a union president following an election in which such agents supported his unsuccessful opponent did not state a claim for violation of the LMRDA, 29 U.S.C. § 401, *et seq.* Id. at 441-42 ("Here, the presidential election was a vigorous exercise of the democratic processes Congress sought to protect. Petitioners—appointed by the defeated candidate—campaigned openly against respondent Leu, who was elected by a substantial margin. The Union's bylaws, adopted, and subject to amendment, by a vote of the union membership, grant the president

9

plenary authority to appoint, suspend, discharge, and direct the Union's business agents, who have significant responsibility for the day-to-day conduct of union affairs. Nothing in the Act evinces a congressional intent to alter the traditional pattern which would permit a union president under these circumstances to appoint agents of his choice to carry out his policies. . . . We therefore conclude that petitioners have failed to establish a violation of the Act.").[5] While defendant fails to expressly identify any authority recognizing that termination of certain union agents for purported disloyalty following an election serves as a legitimate nondiscriminatory reason for an adverse employment action for purposes of Title VII, the Finnegan Court's conclusion—that such termination was inactionable for purpose of Title 29 U.S.C. § 401, *et. seq.*—supports such a recognition here.

In any event, defendant further identifies a unitary interest in support of plaintiff's termination. In his declaration, Larson testifies that because plaintiff's role involved serving as "the face of the union to the membership," his dissidence from Larson's leadership impeded "the effective administration of the union." Dkt. 18-1 ¶ 18. Plaintiff fails to proffer any evidence raising a triable issue of material fact that either of defendant's purported non-discriminatory purposes are mere pretexts for the allegedly discriminatory conduct. The closest plaintiff gets are unspecified assertions of a "laundry list" of race-based violations, Dkt. 5 at 3, and a general charge that his termination was the result of a "Jim Crow" era non-compete provision barring African-Americans from running for positions "typically held by White Men," Dkt. 20 at 3. Absent any direct or substantial circumstantial evidence, these general assertions fail to raise a cognizable

---

[5] Accord Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 354-55 (1989) (limiting Finnegan but interpreting as permissible its acknowledgement that the conduct considered—a "newly elected union president['s] discharge[d] of the appointed staff of the ousted incumbent"—advanced the LMRDA's goal of ensuring that unions "are democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections. . . . Indeed, the basis for the Finnegan holding was the recognition that the newly elected president's victory might be rendered meaningless if a disloyal staff were able to thwart the implementation of his programs. While such patronage-related discharges had some chilling effect on the free speech rights of the business agents, we found this concern outweighed by the need to vindicate the democratic choice made by the union electorate.")

1  inference that defendant's proffered reasons for plaintiff's termination were pretextual.  As
2  a result, summary adjudication of this claim is proper on this separate ground as well.

### b. Summary Adjudication of Any Retaliation Claim Is Appropriate

"To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action."  Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

#### i. Plaintiff Failed to Show that He Engaged in a Protected Activity

Here, plaintiff similarly failed to establish a prima facie case of retaliation because he fails to identify any "protected activity."  As commonly used, that term extends to acts circumscribed by Title 42 U.S.C. § 2000e-3(a).  Poland, 494 F.3d at 1180 ("In this case, Poland's filing of EEOC complaints was a protected activity") (citing Title 42 U.S.C. § 2000e–3(a)).  Title 42 U.S.C. § 2000e-3(a) provides that is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  "Unlawful employment practices," as that term is defined at Title 42 U.S.C. § 2000e-2, generally extends to only adverse employment decisions made on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.

Here, plaintiff fails to identify any activity—much less any opposition to defendant's employment practices or participation in any Title VII action prior to his termination—that would form the basis for his retaliation claim.  Given such failure, he cannot show a "protected activity" in the first instance.  Even if the court generously construed plaintiff's "running for higher office within [his] local union" as such purported activity, a protected activity must tie back to some adverse employment action improperly taken on the basis

of race, color, religion, sex, or national origin. As discussed above, plaintiff fails to satisfy his prima facie showing of defendant's purported racial discrimination.

Separately, plaintiff did not initiate his civil rights grievances until *after* his challenged termination. Given that sequence, he cannot rely upon such grievances as the basis for his protected activity under Title 42 U.S.C. § 2000e-3(a). Because plaintiff altogether fails to establish a prima facie case of retaliation, summary adjudication of this claim is proper on this ground as well.

### ii. Defendant Identified Legitimate Non-Discriminatory Reasons for the Challenged Action and Plaintiff Failed to Show that Such Reason Was Pretextual

Lastly, as described in the analysis subsection immediately above, defendant offered two legitimate, non-discriminatory reasons justifying plaintiff's termination. Plaintiff failed to show that either such reason was pretextual. As a result, summary adjudication of this claim is appropriate on this separate ground as well.[6]

---

[6] In its briefing, defendant argues that plaintiff cannot show a claim under the LMRDA, Title 29 U.S.C. § 411. That section provides in relevant part that every member of any labor organization shall have "equal rights . . . to vote in elections," 29 U.S.C. § 411(a)(1), and that "the right . . . to express any views, arguments, or opinions," 29 U.S.C. § 411(a)(2). As an initial matter, plaintiff fails to specify any claim premised upon that section. Even if the court generously construed plaintiff's allegations to attempt such a claim here, the Supreme Court in Finnegan, as discussed above, recognized that union leadership may terminate members in similar post-election circumstances on grounds that such members "would be unable to follow and implement his policies and programs," Finnegan, 456 U.S. at 435, and do so consistent with Title 29 U.S.C. §§ 411(a)(1) and (a)(2). While any such claim under Title 29 U.S.C. § 411 is not cognizable from plaintiff's pleading in the first instance, plaintiff cannot show that such claim would be actionable even if it were.

**CONCLUSION**

For the foregoing reasons, the court grants defendant's motion for summary judgment on all claims.

**IT IS SO ORDERED.**

Dated: December 20, 2019

<u>/s/ Phyllis J. Hamilton</u>
PHYLLIS J. HAMILTON
United States District Judge